UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ENRIQUITA TORRES,**

      **Plaintiff,**

v.     Case No:   6:13-cv-1687-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

# MEMORANDUM OF DECISION

Enriquita Torres (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1.[1] Claimant raises a single issue on appeal – that the Administrative Law Judge's (the "ALJ") credibility determination is not supported by substantial evidence. Doc. No. 18 at 1-9. For the reasons that follow, the Commissioner's final decision is **AFFIRMED**.

## I.   THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe

---

[1] On November 15, 2009, Claimant filed application for DIB, alleging disability beginning on October 1, 2008. R. 182-83. On November 19, 2009, Claimant also filed an application for SSI. R. 184-87. Claimant last met the insured status requirements of the Social Security Act for DIB on December 31, 2013. R. 62.

> impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of

factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**III. ANALYSIS.**

As set forth above, the sole issue for the Court to resolve is whether the ALJ's credibility determination is supported by substantial evidence. *See* Doc. No. 18 at 1-9. More specifically, Claimant takes issue with the ALJ's credibility determination in regard to the ALJ's handling of Claimant's subjective complaints arising from her bilateral carpal tunnel syndrome. *Id*. With the exception of the ALJ's ultimate conclusion concerning the limiting effects of Claimant's bilateral carpal tunnel syndrome, Claimant accepts as true the ALJ's discussion of Claimant's testimony and the medical evidence as contained in the ALJ's October 19, 2011 decision (R. 60-72). Doc. No. 18 at 3.

Claimant raises two arguments regarding the ALJ's credibility determination. First, the Claimant generally argues that the ALJ's credibility determination with respect to Claimant's subjective limitations stemming from her carpal tunnel syndrome is not supported by substantial evidence. Doc. No. 18 at 2, 6-7, 9. Second, Claimant argues that the ALJ should have considered whether Claimant had greater limitations due to her carpal tunnel syndrome prior to undergoing carpal tunnel release surgeries in July 2010 (left hand) and April 2011 (right hand). Doc. No. 18 at 6-8. In other words, Claimant implicitly argues that the ALJ should have considered whether Claimant was entitled to a closed period of disability. *Id.*[2] By failing to do

so, Claimant argues that the ALJ's credibility determination is not supported by substantial evidence. *Id*. The Commissioner argues that the ALJ's credibility determination is supported by substantial evidence and that the ALJ was under no duty to consider a closed period of disability because the Claimant never requested such consideration. Doc. No. 19 at 1-9.

At the hearing before the ALJ, Claimant's attorney argued that Claimant can handle and finger at full strength only on an occasional basis and, therefore, Claimant cannot perform frequent handling and fingering. R. 84. Claimant testified that she has past-relevant work as a mail handler clerk for the United States Post Office. R. 87. Claimant stated that she has bilateral carpal tunnel syndrome and has had carpal tunnel release surgery on both hands. R. 89. Claimant testified that after surgery on her right hand in April of 2011, her hand is "still numb and it's very sore [when she] pick[s] up things." R. 89. Claimant testified that due her level of pain in the right hand, she experiences pain "running up to [her] shoulder." R. 89. Claimant testified that her left hand is better after undergoing surgery, but she still experiences occasional numbness. R. 90. Due to her pain in her hands, Claimant testified that: there are days she cannot comb her hair; she has difficulty washing with her right hand; she cannot hold onto a gallon of milk; and five (5) pounds is the most she could lift and carry up to one-third of the time during an eight-hour workday. R. 90, 93-94. Claimant testified that she could dress herself, get in and out of the shower, drive, occasionally cook, wash her own dishes, and do her own laundry. R. 96. Claimant stated that she would have difficulty performing such work as being a cashier or mail clerk because her problems with mobility and numbness in her hands. R. 97-98.

In the decision, at step-two of the sequential evaluation process, the ALJ determined that

---

[2] "In a 'closed period' case, the [ALJ] determines [whether the Claimant] was disabled for a finite period of time which started and stopped prior to the date of [the ALJ's] decision." *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

Claimant has the following severe impairments: bilateral carpal tunnel syndrome; chronic obstructive pulmonary disease; hypertension; obesity; depression; lumbago; lumbar spondylosis with canal stenosis and disc protrusions; diabetic mellitus with polyneuropathy and bilateral arthroscopies of the knees. R. 63. Before determining whether Plaintiff could perform her past work as a mail clerk, the ALJ made the following residual functional capacity assessment (the "RFC"):

> The [ALJ] finds that the claimant has the [RFC] to perform less than a full range of light work . . . except she can stand/walk for six hours in an eight-hour workday and sit for approximately six hours in an eight hour workday with normal breaks. She must never climb ladders, ropes, or scaffolds and is limited to only occasionally performance [sic] of all other postural limitations including climbing stairs or ramps, balancing, stooping, kneeling, crouching or crawling. The claimant must avoid concentrated exposure to irritants such as fumes, odors, dust, gases and avoid concentrated exposure to hazards. <u>She is limited in her gross/handling and fine/fingering manipulations bilaterally to frequent</u>. The claimant is further limited to unskilled work with a specific vocational preparation (SVP) of one or two defined as simple, routine, repetitive tasks and with occasional interaction with the general public.

R. 67 (emphasis added). Thus, the ALJ determined that Claimant is limited bilaterally to frequent handling and fine finger manipulations. R. 67.

In making the above findings, the ALJ reviewed the following medical evidence: from 2009 through 2010 Claimant was treated for bilateral carpal tunnel syndrome at the Tampa Family Health Center where she received medication, bilateral wrist braces, physical therapy, and referrals to specialists (R. 63-64); in March of 2010, Claimant's treating orthopedist found 5/5 grip strength and noted that Claimant was capable of performing fine and gross manipulations (R. 64); a March 2010 consultative examination noted that Claimant carries a diagnosis of bilateral carpal tunnel syndrome (R. 64); on June 17, 2010, Dr. John Rinde, a non-examining consultative physician opined that Claimant can push and/or pull with hand controls for an unlimited amount of time and

that Claimant has no manipulative limitations (R. 70); in July of 2010, Claimant underwent carpal tunnel release of the left hand (R. 64); and in April of 2011, Claimant underwent carpal tunnel release of the right hand and in a follow-up appointment she report receiving good results from the surgery (R. 64).  The ALJ also reviewed all of Claimant's written statements, including various reports she made to the Commissioner.  R 67-68.  Finally, the ALJ reviewed the Claimant's testimony.  R. 69.

The ALJ then made the following credibility determination:

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment. . . .  Although the claimant does have some limitations in her ability to perform work-related activities, the medical evidence of record does not totally preclude her from performing these activities.
>
> In terms of the claimant's alleged limitations, the [ALJ] finds that the testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of her limitations.  Neither the severity nor the extent is supported by the objective medical evidence of record.  The claimant's allegations regarding her physical limitations are also noted to be overly restrictive with claims that she could only walk for 1 block, stand for 15-20 minutes, ands lift light objects as physical examinations revealed normal strength and normal range of motion results.  The claimant is noted capable of shopping, performing chores, attending church, driving her father to doctor appointments and caring for her own hygiene.  If fact, in June 2011, physical examination show no neurological symptoms, no motor disturbances and no sensory disturbances.  In addition, she denied having any psychological symptoms or feelings of hopelessness or anhedonia.  Furthermore, the claimant admitted to exercising regularly (Exhibit 33F).  These inconsistencies reflect negatively on the claimant's credibility, the [ALJ] have given the claimant's assertions all due consideration and has addressed her limitations in the claimant's [RFC].  The claimant's conditions are not so debilitating that they prevent her from performing work within the [RFC] described above.

R. 69-70.  Thus, the ALJ found Claimant's subjective statements not credible, which necessarily

includes Claimant's statements related to her hands, because they are inconsistent with the medical record and they are inconsistent with her activities of daily living. R. 67-70.

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[3] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

---

[3] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (1996).

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62; *see also* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if credibility is critical to the outcome of the case. *Id*.

Claimant maintains that the ALJ's credibility determination is not supported by substantial evidence with respect to any limitations stemming from Claimant's carpal tunnel syndrome because the medical opinions relied upon by the ALJ in the decision were rendered before Claimant's carpal tunnel release surgeries and those examiners did not have the benefit of later medical records. Doc. No. 18 at 6-7 ("[T]he latest opinion from a medical advisor was in June 2010, prior to the [Claimant] undergoing carpal tunnel release surgery on her left hand and later right hand [and] he did not have the benefit of later records from Dr. Goldsmith (R. 684-686) and had he been privy to he may have given a different opinion."). Claimant cites to the portion of the medical record where Claimant underwent carpal tunnel releases (R. 684-86), but, notably, Claimant fails to cite to any medical evidence or medical opinion showing that Claimant's hand limitations are greater than those reflected by the ALJ in the RFC. Doc. No. 18 at 1-9. As specifically noted by the ALJ, the medical record shows that: on March 6, 2010, Claimant's treating orthopedist opined that Claimant is capable of performing fine and gross manipulations on a sustained basis and has 5/5 grip strength (R. 64, 581); on March 11, 2010, a consultative

examining physician opined that Claimant is diagnosed with bilateral carpal tunnel syndrome, but fine and gross dexterity as well as manipulation are normal (R. 64, 587); on June 17, 2010, Dr. John Rinde, a non-examining consultative physician opined that Claimant has no manipulative limitations (R. 70, 636, 638); and Claimant underwent carpal tunnel release surgeries July 2, 2010 and April 4, 2011 with good results (R. 64, 677, 681, 684-86). In short, the record reviewed by the ALJ does not demonstrate the presence of any limitations as a result of Claimant's bilateral carpal tunnel syndrome either before or after the surgery. *Id*. Moreover, the ALJ pointed out that Claimant's subject statements conflict with her activities of daily living. R. 70. Nevertheless, the ALJ gave Claimant the benefit of the doubt and limited her to frequent bilateral "gross/handling and fine/fingering manipulation." R. 67. Accordingly, the ALJ's decision finding Claimant's subjective statements with respect to her hand limitations not credible to the extent they conflict with the ALJ's RFC is supported by substantial evidence.

Claimant also argues, without citation to any legal authority, that the ALJ should have considered whether Claimant should be awarded a closed period of disability prior to undergoing carpal tunnel release surgery. Doc. No. 18 at 6-9. Claimant maintains that the ALJ's decision "does not delineate between the [Claimant's] level of functioning prior to the surgery or after the surgery," and the "ALJ should have considered whether the [Claimant] was more limited prior to carpal tunnel release procedures than she was after the procedures." Doc. No. 18 at 6-7. The Court disagrees for three principal reasons.

First, the ALJ's decision clearly states that Claimant "has not been under a disability . . . from October 1, 2008, through the date of this decision." R. 60. Thus, there is no indication that the ALJ did not in fact consider whether Claimant was under a disability at any time from October 1, 2008, through the date of the decision. Second, Plaintiff points to no evidence, other than the

fact that Claimant underwent two carpal tunnel release surgeries, which may even support a finding of disability for a closed period.  *See* Doc. No. 18 at 6-8.  However, undergoing two surgeries, in and of themselves, "does not establish that she was disabled or had any functional limitations." *McDaniel v. Astrue*, 2009 WL 2777716, at *7 (S.D. Ga. July 31, 2009) (citing authority).  Thus, the evidence discussed by the ALJ (*see supra* pp. 5-6, 8-9) supports the limitations imposed by the ALJ in the RFC and the ALJ's credibility determination.  Third, Claimant did not request that the ALJ consider a closed period of disability.  At least one court that has considered this issue has concluded that a claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same.  *See Wartin v. Astrue*, 2010 WL 1286520, at *11 (S.D. Fla. Feb. 24, 2010), *report and recommendation adopted*, 2010 WL 1257902 (S.D. Fla. Mar. 30, 2010).  The Court finds this reasoning persuasive.  Accordingly, for the forgoing reasons, this argument is rejected.

**IV.    CONCLUSION.**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and
2. The Clerk is directed to enter judgment in favor of the Commissioner and against the Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on March 3, 2015.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record